## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.
                                Case No: 8:19-cv-1621-CEH-TGW
                                Consolidated with:
                                Case No. 8:20-cv-1937-CEH-CPT

CURTIS A. CRENSHAW and
COASTAL STATES
DEVELOPMENT, LLC,

     Defendants.
_____/

## O R D E R

       This cause comes before the Court upon the United States of America's Motion for Summary Judgment and for Default Judgment against Defendant Coastal States Development, LLC (Doc. 51), to which Defendant Curtis A. Crenshaw responds in opposition (Doc. 60), and Crenshaw's Dispositive Motion for Summary Judgment (Doc. 52), to which the Government responds in opposition (Doc. 58). The Government and Crenshaw both reply (Docs. 61, 62). With the Court's leave (Doc. 64), the Government filed a sur-reply to Crenshaw's reply (Doc. 65). The Court held oral argument on these motions. *See* Doc. 67 at 1. The Government's Renewed Motion for Default Judgment against Defendant Coastal States Development, LLC (Doc. 70) also pends.

The Government brings this action to reduce to judgment unpaid federal taxes of Coastal, for which the Government contends that Crenshaw is liable. For the reasons set forth below, the Court will deny the Government's Motion for Summary Judgment, deny Crenshaw's Dispositive Motion for Summary Judgment, and deny the Government's Renewed Motion for Default Judgment, without prejudice

## I.    BACKGROUND[1]

In 2006 and 2007, Curtis A. Crenshaw operated Coastal States Development, LLC, as a single-member limited liability company. Doc. 59 ¶1. On behalf of Coastal, Crenshaw filed a Form 940 for the annual tax period ending on December 31, 2007. *Id.* IRS transcripts reflect that a delegate of the Secretary of the Treasury assessed against Coastal the Form 941 and Form 940 taxes for the periods indicated, plus applicable interest and penalties, on the dates and in the amounts set forth in the following table:

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based mainly upon the Stipulation of Agreed Material Facts (Doc. 59). The Court has also considered the evidence provided by the parties, including Revenue Officer Amy Ham's declarations; the Forms 4340; the copy of the INTST computation; the distribution deed; the notices of federal tax liens and refiling of tax liens; the declarations of the Government's attorney; requests for admissions and responses thereto; Crenshaw's declarations; requests for production and responses thereto; the TXMODAs; the excerpts from Coastal's ICS History; the declaration of Crenshaw's attorney; the 2013 reports from the Treasury Inspector General for Tax Administration; and the Government's initial disclosures.

| Type of Tax | Tax Period Ending | Assessment Date | Tax | Interest | Penalties |
|---|---|---|---|---|---|
| Form 941 | 12/31/2006 | 07/16/2007<br>08/20/2007<br>11/24/2008<br>11/30/2009<br>01/04/2010<br>12/02/2013<br>12/03/2018 | $8,583.25<br><br><br><br>$9,172.78 | $318.01<br><br><br><br><br><br>$13,346.87 | $1,115.82<br>$429.16<br>$1,330.40<br>$557.91<br>$1,375.72<br>$2,293.19 |
| Form 941 | 03/31/2007 | 09/10/2007[1]<br>10/15/2007<br>11/24/2008<br>11/30/2009<br>12/28/2009<br>12/02/2013<br>12/03/2018 | $9,585.29<br><br><br><br>$8,267.93 | $321.78<br><br><br><br><br><br>$14,689.27 | $2,492.17<br>$479.26<br>$1,294.02<br>$862.67<br>$2,480.37<br>$2,066.98 |
| Form 940 | 12/31/2007 | 06/02/2008 | $112.00 | $2.80 | $17.92 |

*Id.* at ¶2.[2]

Crenshaw acquired an interest in real property in Marengo County, Alabama (the "Subject Property") as a tenant in common with his sister, Jeannine C. Larson, by a distribution deed upon the termination of the Grace Crenshaw Trust of 1998 from grants of Curtis Crenshaw, Jr. and Jeannine C. Larson, who served as trustees of the trust. *Id.* at ¶¶3–4. Jeannine Larson retains a one-half interest in the Subject Property. *Id.* at ¶3. Larson "had nothing to do" with Coastal's operations, nor does she have any link to the purported tax liabilities assessed against Coastal. *Id.* at ¶17.

---

[2] As explained in the footnote next to the September 10, 2007 assessment, the tax assessment made on September 10, 2007, for the quarterly tax period ending on March 31, 2007, has become unenforceable. Doc. 59 ¶2 n.1. As such, the Government does not seek to collect the balance due on that assessment or the associated penalties or interest. *Id.* Further, in the Renewed Motion for Default Judgment, the Government provides a table that includes updated interest and penalties. Doc. 70 at 2. However, the Court relies on the table above in setting forth the undisputed facts since the parties have agreed to those amounts.

The Subject Property, which is subject to foreclosure in this action, is 118 acres of vacant land in Marengo County, Alabama, with no address. *Id.* at ¶5. The legal description of the Subject Property is:

> Begin at an iron pin at the Northwest corner of the Northwest Quarter of the Southwest Quarter of Section 12, Township 12 North, Range 1 West, thence South along the East line of the West Half of the Southwest Quarter of said Section 12 a distance of 1947 feet, thence South 86 degrees 40 minutes West a distance of 2628 feet to an iron pin on the West line of the Southeast Quarter of the Southeast Quarter of Section 11, Township 12 North, Range 1 West, thence North along the West line of the East Half of the Southeast Quarter of Section 11 a distance of 1947 feet to the Northwest corner of the Northeast Quarter of the Southeast Quarter of Section 11, thence East a distance of 2624 feet to the place of beginning. All being situated in the West Half of the Southwest Quarter of Section 12, East Half of the Southeast Quarter, of Section 11, all in Township 12 N Range 1 West, Marengo County, Alabama, and containing 118 acres, more or less.
>
> Being the same property conveyed to Grace Crenshaw by deed dated November 10, 1967 and of record in the Office of the Judge of Probate of Marengo County, Alabama.
>
> Being the same property conveyed to Curtis Crenshaw, Jr. and Jeannine C. Larson by deed dated December 20, 2002 and of record in the Office of the Judge of Probate of Marengo County, Alabama.
>
> Parcel Numbers: 3701110000002002 & 3701120000002000

*Id.* at ¶ 5.

The distribution deed, dated December 20, 2002, was recorded on January 31, 2003, in the public records of Marengo County, Alabama, at Book Deed9T, Pages 744–47. *Id.* at ¶4.

On August 28, 2010, a delegate of the Secretary of the Treasury caused a notice of federal tax liens to be recorded in the public records of Marengo County, Alabama,

at Mortgage Book 2010 and Page 425 for the assessments described in the table above. *Id.* at ¶6.

Later, on June 29, 2018, a delegate of the Secretary of the Treasury refiled the notice of federal tax liens for the assessment of Coastal's Form 940 tax for the annual tax period ending on December 31, 2007, which was assessed on June 2, 2008. *Id.* at ¶7. Similarly, on August 28, 2018, the notice was refiled for Coastal's Form 941 tax for the quarterly tax period ending on December 31, 2006, which was assessed on July 16, 2007. *Id.* at ¶8. On December 30, 2019, the notice was refiled for Coastal's Form 941 tax for the quarterly period ending on December 31, 2006, which was assessed on January 4, 2010, as well as for Coastal's Form 941 tax for the quarterly tax period ending on March 31, 2007, which was assessed on December 28, 2009. *Id.* at ¶9.

Coastal is in default. Doc. 69 at 1. The Government and Crenshaw agree that the applicable statute of limitations for collection—Section 6502 of the Internal Revenue Code—gives the Government ten years from the date of assessment to collect unpaid federal tax liabilities. Doc. 59 ¶10. They also agree that the statute of limitations for collections is suspended for an installment agreement during: (1) the pendency of a proposed installment agreement; and (2) the 30 days following an installment agreement's termination. *Id.* at ¶11.

In the Amended Complaint, the Government alleges that, "[w]hile the initial tax assessments against Coastal for 2006 and 2007 were made in 2007 and 2008, events since those assessments tolled the period to bring this suit." Doc. 26 ¶17. Specifically, the Government alleges that Coastal had a proposed installment agreement pending

with the IRS from November 7, 2008, until it was agreed to on January 6, 2010. *Id.* According to the Government, after Coastal defaulted on that installment agreement, it was terminated on September 7, 2010. *Id.* The Government also alleges that Coastal then proposed another installment agreement on December 14, 2010, which was pending until it was agreed to on August 22, 2011. *Id.* The Government alleges that, after Coastal defaulted on that installment agreement, it was terminated on April 2, 2012. *Id.* As a result, the Government alleges that the 10-year statute of limitations "to bring this suit" was tolled by at least 736 days. *Id.*

However, the Government does not have in its possession, custody, or control any copies of the proposed installment agreements referenced in the Amended Complaint, nor does the Government have in its possession, custody, or control any copies of correspondence to and from Coastal or Crenshaw relating to the proposed installment agreements referenced in the Amended Complaint. Doc. 59 ¶¶13–14. According to the Government and Crenshaw, "Crenshaw denies proposing the two installment agreements referenced in Paragraph 17 of the Amended Complaint, including the details pertaining to the [IRS's] purported acceptance and rejection of the agreements." *Id.* at ¶16.

The Government and Crenshaw stipulate that, if the Court determines that the two installment agreements extended the collection statute of limitations by 736 days, then the Government timely filed this action against Crenshaw and Coastal. *Id.* at ¶12. Finally, they also stipulate that, the Government's "prayer for relief would be time-barred by the applicable statute of limitations to collect an unpaid tax absent the

application of the period that the [Government] asserts in Paragraph 17 of the Amended Complaint was tolled." *Id.* at ¶15.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. But a party cannot defeat summary judgment by

relying on conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).[3] Summary judgment should be granted only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

---

[3] Unpublished decisions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

### III.   ANALYSIS

The Court begins with Crenshaw's Motion for Summary Judgment before turning to the Government's Motion for Summary Judgment. As explained in more detail below, the Court will deny both motions and also deny the Government's Renewed Motion for Default Judgment.

### A. The Court Will Deny Crenshaw's Motion for Summary Judgment

#### i.   *Applicable Standards and Crenshaw's Arguments*

Crenshaw moves for summary judgment, arguing that this action is untimely under the relevant statute of limitations. Doc. 52 at 3. The Internal Revenue Code authorizes and requires the Secretary to "make the inquiries, determinations, and assessments of all taxes" imposed by the Code, or accruing under any previous internal revenue law, "which have not been duly paid by stamp at the time and in the manner provided by law." 26 U.S.C. § 6201(a). The Secretary must "assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists" are made under the Code. *Id.* § 6201(a)(1). Except as otherwise provided, the amount of any tax imposed by the Internal Revenue Code must be assessed within 3 years after the return was filed, and "no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."[4] *Id.* § 6501(a).

---

[4] "Return" is defined as "the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." 26 U.S.C. § 6501(a).

In turn, Section 6502 discusses the collection of assessed taxes by levy or court proceeding. In relevant part, that section provides:

> (a) Length of period.--Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
>
>> (1) within 10 years after the assessment of the tax, or
>>
>> (2) if--
>>
>>> (A) there is an installment agreement between the taxpayer and the Secretary, prior to the date which is 90 days after the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer at the time the installment agreement was entered into;
>>>
>>> . . .
>>
>> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

*Id.* § 6502(a).

Further, the "statute of limitations under section 6502 for collection of any liability shall be suspended during the period that a proposed installment agreement relating to that liability is pending with the IRS, for 30 days immediately following the rejection of a proposed installment agreement, and for 30 days immediately following the termination of an installment agreement." 26 C.F.R. § 301.6331-4(c)(1). "A proposed installment agreement becomes pending when it is accepted for processing." *Id.* § 301.6331-4(a)(2). A proposed installment agreement "remains pending until the IRS accepts the proposal, the IRS notifies the taxpayer that the proposal has been rejected, or the proposal is withdrawn by the taxpayer." *Id.*

10

In the Amended Complaint, the Government alleges that, although the initial tax assessments against Coastal were made in 2007 and 2008, Coastal entered into two installment agreements with the IRS that tolled the statute of limitations. The first agreement was allegedly pending with the IRS from November 7, 2008, until it was agreed to on January 6, 2010, and was terminated on September 7, 2010, after Coastal defaulted. Doc. 26 ¶17. Coastal allegedly proposed the second installment agreement on December 14, 2010, which was pending until it was agreed to August 22, 2011, and was terminated on April 2, 2012, after Coastal defaulted. As such, the Government alleges that the 10-year period to bring this action was tolled by at least 736 days. The parties agree that, if the Court finds that the two installment agreements extended the statute of limitations by 736 days, then the Government timely filed this action. Further, during oral argument, counsel for the Government described the "timeliness of the Government's complaint" as "the main issue."

In moving for summary judgment, Crenshaw contends that the Court should apply the ten-year statute of limitations because the record lacks admissible evidence proving any installment agreement between him and the IRS. Doc. 52 at 9. "A statute of limitations defense is an affirmative defense." *Paetz v. United States*, 795 F.2d 1533, 1536 (11th Cir. 1986); *see* Fed. R. Civ. P. 8(c)(1) (requiring a party responding to a pleading to "affirmatively state" any affirmative defense, including a statute of limitations). Indeed, Crenshaw raised the statute of limitations as an affirmative defense in responding to the Amended Complaint. Doc. 32 at 4 ("Plaintiff's claims are barred by the applicable statute of limitations."). Because the statute of limitations is

an affirmative defense, Crenshaw carries the initial burden of showing that the statute of limitations applies. *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). Once Crenshaw shows that the statute of limitations bars the claim, the burden shifts to the Government to demonstrate that an exception or tolling provision applies. *Id.* at 1552 n.13; *see United States v. Borchardt*, 470 F.2d 257, 261 (7th Cir. 1972) (stating that, because the Government sought the benefit of the waiver exception to 26 U.S.C. § 6502(a), it had the burden of demonstrating the validity of the waivers).

First pointing to the Government's responses to his requests for admissions, Crenshaw highlights the undisputed fact that the Government does not possess any copies of the installment agreements referenced in the Amended Complaint or any copies of correspondence to and from Coastal or Crenshaw relating to those installment agreements.[5] Doc. 52 at 10. Crenshaw also points to the Government's admission that its "prayer for relief would be time-barred by the applicable statute of limitations to collect an unpaid tax absent the application of the period that the [Government] asserts in Paragraph 17 of the Amendment Complaint the statute of limitations was tolled." Doc. 52-2 at 3–4.

Next, anticipating that the Government will rely on entries in IRS transcripts to prove the existence of the installment agreements, Crenshaw argues that the IRS may not rely on the "presumption of regularity" to prove the existence of a disputed

---

[5] Crenshaw also argues that the Government has not disclosed the existence of any witness that it intends to use in its case-in-chief at trial to testify about their personal knowledge of the installment agreements. Doc. 52 at 10.

document. *Id.* at 10. "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).

Crenshaw cites to *United States v. Nugent*, which persuasively reasons, based upon an extensive analysis of federal appellate cases, that the presumption of regularity applies once the Government satisfies its burden of proving the existence of the document at issue. 300 F. Supp. 3d 932, 941 (E.D. Ky. 2018); *see Welch v. United States*, 678 F.3d 1371, 1379 (Fed. Cir. 2012) ("But, the presumption does not extend to the existence of the notice itself . . . ."); *see also United States v. Hanks*, 569 F. App'x 785, 788 (11th Cir. 2014) (examining the presumption of regularity and stating that a record certifying that notice was sent on a specific day may give rise to a presumption that the notice was sent where the notice's existence is not disputed). Once the Government proves the existence of the document, a court may then invoke the presumption of regularity as to the validity of the *contents* of the document and the procedures followed. *Id.* In *Nugent*, the court rejected the Government's argument that its database entries triggered the presumption that an installment agreement existed, explaining that the presumption did not apply to establish the *existence* of the installment agreement. *Id.* at 942. Instead, the court explained, the Government could invoke the presumption only after bearing the burden of proving the installment agreement's existence because the presumption does not extend to the agreement's existence. *Id.*

But Crenshaw's reliance upon *Nugent* is misplaced in two respects. First, the principle that Crenshaw gleans from this authority—that courts will not permit the Government to rely on certified transcript entries to prove the existence of a disputed document—is inaccurate. As *Nugent* aptly recognizes, while data entries on transcripts do not trigger the presumption of regularity to prove the existence of an installment agreement, the transcripts nonetheless constitute circumstantial evidence for the Court to consider. *Id.*

Second, Crenshaw's attempt to liken himself to the taxpayer in *Nugent* is unavailing. He argues that, like the taxpayer there, he "denied ever signing an installment agreement and denied ever receiving confirmation of an installment agreement." Doc. 52 at 11. Like this action, the Government in *Nugent* did not produce the written installment agreement that purportedly tolled the statute of limitations. 300 F. Supp. 3d at 940. In a sworn affidavit, the taxpayer in *Nugent* stated that he never signed an installment agreement and never received confirmation of an installment agreement. *Id.* at 939. He also stated that, although he agreed to pay money to the IRS, it was not under an installment agreement. *Id.* at 943. The taxpayer's accountant also provided an affidavit, in which he stated that he discussed the taxpayer's case with the IRS and the parties agreed to a reduced levy payment, but not an installment agreement. *Id.* at 939. Together, the taxpayer and the accountant stated that they had not signed or received a copy of an installment agreement, and they denied signing any such document, receiving confirmation, and making such a proposal. *Id.* at 943.

But Crenshaw's evidence differs from the evidence in *Nugent*. Citing to an accompanying declaration, Crenshaw asserts that he has denied proposing two installment agreements on behalf of Coastal, or on behalf of himself, on or about the dates listed in the Amended Complaint. Doc. 52 at 6. In his declaration, he states that he "do[es] not believe" that he signed an installment agreement on his behalf or on behalf of Coastal on or about November 7, 2008, or on or about December 14, 2010.[6] Doc. 52-1 at 3. Similarly, he states that he "does not recall" receiving correspondence from the IRS relating to the acceptance or rejection of either installment agreement. *Id.* A proposed installment agreement has not been accepted until the IRS notifies the taxpayer or the taxpayer's representative of the acceptance.[7] 26 C.F.R. § 301.6159-1(c)(1).

To the extent that Crenshaw relies on this evidence to carry his summary-judgment burden, the declaration is insufficient for that purpose. A statement that an affiant or declarant "believes" something is not in accordance with Rule 56's requirement for affidavits or declarations used to support a motion for summary judgment to be based upon personal knowledge. *Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002); *see Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949)

---

[6] This differs from the Government's allegation that Coastal "had a proposed installment agreement pending" on November 7, 2008, and that Coastal proposed another installment agreement on December 14, 2010. Doc. 26 ¶17.

[7] An installment agreement must be in writing. 26 C.F.R. § 301.6159-1(c)(2). A written installment agreement may take two forms: (1) a document signed by both the taxpayer and the Commissioner or (2) "a written confirmation of an agreement entered into by the taxpayer and the Commissioner that is mailed or personally delivered to the taxpayer." *Id.*

("Belief, no matter how sincere, is not equivalent to knowledge."). Even a declarant who has an "unwavering contention" and believes to the "best of [his] recollection" merely conveys his subjective belief, not personal knowledge. *United States v. Stein*, 769 F. App'x 828, 832 (11th Cir. 2019). Because Crenshaw grounds his statements about not signing the installment agreements on the provided dates in his "belief," those statements do not satisfy the personal knowledge requirement for declarations under Rule 56. Crenshaw's statement that he "does not recall" receiving correspondence from the IRS similarly stems from his belief, not personal knowledge.

He also cites to his responses to the Government's requests for admissions to argue that he has denied proposing the installment agreements and denied the Government's allegations surrounding the installment agreements. Doc. 52 at 6. There, when asked to admit that Coastal proposed its first installment agreement to the IRS on November 7, 2008, Crenshaw admits that the Forms 4340 provided to him by the Government indicate that event, but denies the request because he "has no independent recollection of submitting the installment agreement" and because the Government has failed to produce a copy of the installment agreement. Doc. 52-5 at 6–7. He provides the same response when asked to admit that the IRS terminated Coastal's first installment agreement on September 7, 2010, that Coastal proposed its second installment agreement on December 14, 2010, that the IRS accepted the second installment agreement on August 22, 2011, and that the IRS terminated the second installment agreement on April 2, 2012. *Id.* at 7–8. These denials appear to serve as the evidentiary basis for the parties' stipulation that "Crenshaw denies proposing the two

installment agreements referenced in Paragraph 17 of the Amended Complaint, including the details pertaining to the [IRS's] purported acceptance and rejection of the agreements." Doc. 59 ¶16. He also denies that the IRS accepted Coastal's first installment agreement on January 6, 2010. Doc. 52-5 at 7.

To the extent that Crenshaw relies on these denials—qualified denials, in most instances—to carry his summary-judgment burden, the denials are not sufficient for that purpose. As one district court in this Circuit has persuasively reasoned, denials, unlike admissions, fail to constitute "materials in the record" under Rule 56(c) that a party may rely upon in making or responding to a motion for summary judgment. *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, 877 F. Supp. 2d 1161, 1170 (N.D. Ala. 2012). A denial merely indicates that a party has not conceded an issue; it lacks "the heft of an affidavit, stipulation, interrogatory answer, or deposition testimony, let alone the 'conclusively established' status of an admission." *Id.*

Thus, after excluding those items of Crenshaw's evidence that do not comply with Rule 56, the remaining evidence is the Government's admission that: (1) it does not have in its possession, custody, or control any copies of the installment agreements or correspondence to and from Coastal or Crenshaw relating to the installment agreements; and (2) the statute of limitations to collect an unpaid tax would bar its prayer for relief absent the alleged tolling of that statute by 736 days as a result of the two installment agreements. Thus, he demonstrates that the statute of limitations applies. *See Blue Cross & Blue Shield*, 913 F.2d at 1552. Assuming that this evidence and accompanying argument sufficiently discharges Crenshaw's summary-judgment

burden, the Government, in response, demonstrates a genuine issue of material fact about the timeliness of this action.[8]

*ii.   Ham's Declarations and the Government's Arguments*

In response, the Government generally argues that two installment agreements extended the statute of limitations by 736 days and that evidence in the record shows the existence of those installment agreements. Doc. 58 at 4–10. In support, the Government relies upon a declaration of Revenue Officer Amy Ham (Doc. 58-1), to which the Government attaches three exhibits: Forms 4340 (Doc. 58-2); another type of transcript known as a "TXMODA" (Doc. 58-3), and excerpts from Coastal's integrated collection history ("ICS History") (Doc. 58-4). But Crenshaw challenges the Government's reliance upon this declaration in his reply, contending that the Government's initial disclosures identified only an unnamed employee of the IRS whom the Government could designate to authenticate transcripts, correspondence, and other business records in possession of the IRS. Doc. 62 at 3–4. According to Crenshaw, the Government disclosed Ham's two declarations (the Government attaches the other declaration to its Motion for Summary Judgment) after the close of discovery and the declarations extend beyond authenticating records.[9] *Id.* at 4. He urges the Court to "decline to entertain" Ham's declarations. *Id.* at 2. Thus, given the

---

[8] Even if the Court considered Crenshaw's declaration and discovery responses as appropriate evidence under Rule 56, the Government would still succeed in demonstrating a genuine issue of material fact in light of the Government's evidence, as discussed herein.

[9] At the Court's direction (Doc. 64), the Government filed a sur-reply addressing this issue (Doc. 65).

Government's reliance upon Ham's declaration in responding to Crenshaw's motion, the Court must first determine whether it may consider Ham's declarations.

1. Ham's Declarations

Under Rule 26(a) of the Federal Rules of Civil Procedure, the Government, without awaiting a discovery request, needed to provide Crenshaw with "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the [Government] may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Initial disclosures were due by January 3, 2020. Doc. 20 at 1; Fed. R. Civ. P. 26(a)(1)(C). The Government did not explicitly disclose Ham in its initial disclosures. Instead, in disclosing individuals under Rule 26(a)(1), it explained that "[a]n employee of the Internal Revenue Service may be designated to authenticate transcripts, correspondence, and other business records in the possession of the Service." Doc. 62-1 at 4. Having made this disclosure under Rule 26(a), the Government needed to supplement or correct its disclosure "in a timely manner" if it: (1) learned that, "in some material respect," the disclosure was incomplete or inaccurate; and (2) the additional information had not otherwise been made known to Crenshaw during discovery or in writing. Fed. R. Civ. P. 26(e)(1). Further, if the Government failed to provide information or identify a witness in accordance with Rule 26(a) or (e), it cannot use that information or witness to supply evidence on a motion, or a trial, unless the Government's failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

19

The Government argues that the Court may consider Ham's declarations because the Government timely disclosed that it may call an IRS agent to authenticate records. Doc. 65 at 3–4. But Ham's declarations extend beyond simply authenticating records. For example, in the declaration offered to support the Government's response, Ham claims that, although the Forms 4340 indicate that the first installment agreement was granted and activated on two separate dates, an "-A freeze" prevented the IRS from "granting and activating" the first installment until January 6, 2010. Doc. 58-1 at 4–5. Similarly, in the declaration offered to support the Government's motion, Ham cites to certain regulations to explain that Coastal was disregarded as an entity separate from Crenshaw for all federal-tax purposes because it had a single owner. Doc. 51-4 at 4. The Government tacitly acknowledges that Ham's declarations extend beyond authentication, too. *See* Doc. 65 at 4 ("[T]he Declarations simply authenticate *and explain* the IRS records . . . .") (emphasis added); Doc. 51 at 14 ("[T]he Declaration of Revenue Officer Ham *demonstrates* that the unpaid balance due, including statutory additions including interest to December 16, 2020, is $54,830.68.") (emphasis added).

The Government also points out that it disclosed Ham in its responses to Crenshaw's second requests for production during the discovery period. Doc. 65 at 5. Referencing Rule 26(e), the Government contends that it did not supplement its disclosures because these responses identified Ham, thereby making her known to Crenshaw during discovery. *Id.* at 5 n.2. Crenshaw did not address this argument during oral argument, focusing instead on whether the declarations extend beyond authentication. In his second requests for production of documents, which he served

20

on the Government on October 22, 2020, Crenshaw sought: documents reflecting that the assessments for the tax periods at issue were made in accordance with returns filed by Coastal; documents that the Government had not yet produced in response to Crenshaw's previous request for files relating to collection activity for the tax periods alleged in the Amended Complaint; and copies of the installment agreements and related correspondence. Doc. 65-4 at 3, 5–6; Doc. 65-5 at 4–5. In its responses, the Government disclosed Ham and her role, stating that "counsel for the United States sent Mr. Crenshaw's Second Requests for Production of Documents to . . . the Revenue Officer Amy L. Ham, who was assigned to collect the unpaid tax liabilities at issue in this action." Doc. 65-6 at 1. The Government also explained that IRS counsel and Ham had "searched their respective offices for additional documents" and that Ham had submitted another request for files from the IRS storage facility. *Id.*

The Government served these responses on Crenshaw on November 20, 2020, Doc. 65-6 at 4–5, three days before the November 23, 2020 discovery deadline, Doc. 45. Thus, the Government revealed Ham's identity and her role of collecting the unpaid tax liabilities in this action during the discovery period. To be sure, the Government served these responses near the end of discovery. But, following his review of the three-page paper, Crenshaw could have moved to extend the discovery deadline so that he could depose Ham. Indeed, Crenshaw previously sought an extension of the discovery deadline. *See* Doc. 44 at 3. However, he chose not to do so after receiving the Government's responses because he believed Ham to be a records custodian. Because the Government provided this additional information about Ham

to Crenshaw before the close of discovery, thereby making her known to Crenshaw during discovery, the Government did not need to supplement or correct its initial disclosure, and the Court may consider Ham's declarations. *See Beasley v. Wells Fargo Bank, N.A.*, No. 6:20-cv-883-WWB-EJK, 2021 WL 9204484, at *3 (M.D. Fla. Dec. 23, 2021) (holding that the plaintiff was not required to supplement its disclosure where the witnesses' names appeared on documents and were revealed throughout discovery).

Even if the Court assumes, for argument's sake, that the Government failed to disclose Ham in violation of Rule 26(a) and (e), that failure was harmless. In determining whether this failure was harmless, the Court must consider the Government's explanation for its failure to disclose, the importance of the information, and any prejudice to Crenshaw if the information was admitted. *See Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009). This three-part test consists of "factors" for the Court's analysis, and each factor need not be satisfied. *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (explaining that the first and third factors can sometimes outweigh the second factor); *see Otto Brands, LLC v. Otto's Express Car Wash, LLC*, No. 3:19cv572/TKW/EMT, 2020 WL 5845736, at *3 n.1 (N.D. Fla. July 10, 2020) (noting that the first two factors weighed in the plaintiffs' favor and that the third factor did not "tip the scale" in favor of the defendants). The Court must analyze these factors because excluding evidence is a "harsh" sanction. *Olivas v. A Little Havana Check Cash, Inc.*, No. 05-22599-CIV-JORDAN/TORRES, 2007 WL 9723399, at *3 (S.D. Fla. Apr. 18, 2007). The burden rests with the

Government. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). Ultimately, the Court enjoys broad discretion in determining whether a failure to disclose is harmless. *King v. Akima Global Servs., LLC*, 323 F.R.D. 403, 410 (S.D. Fla. 2017).

In its broad discretion, the Court finds that any failure of the Government to disclose Ham was harmless. The third factor overwhelmingly weighs in the Government's favor. Crenshaw contends that he will suffer prejudice if the Court considers the declarations since the Government provides them to prove that the installment agreements tolled the statute by 736 days—a disputed fact—and because the late disclosure prevented him from taking her deposition on the "crucial areas" of her testimony.[10] Doc. 62 at 6. However, to the extent that Ham's declarations address the purported timeliness of this action, her testimony simply explains the accompanying records that the Government offers to argue that the action is timely. For example, in her second declaration, she explains that: the Forms 4340 show that the installment agreements tolled the statute of limitations by 736 days; that the TXMODAs reflect transaction codes for the proposal, acceptance, and termination of the installment agreements; and that certain entries in the ICS history reference the installment agreements. Doc. 58-1 at 4–7. The Government argues that it provided Crenshaw with the IRS records attached to its motion and its response during

---

[10] Of course, as explained above, Crenshaw could have moved to extend the discovery deadline to depose Ham, but, for purposes of this analysis, the Court assumes that the Government failed to disclose Ham in violation of Rule 26(a) and (e).

discovery. Doc. 65 at 2. Indeed, a review of evidence provided by Crenshaw indicates that he received the Forms 4340 and the ICS history. *See generally* Doc. 52-5; *see* Doc. 60-8 at 1. And Crenshaw does not argue that he did not receive the accompanying records; he argues only that Ham's testimony about the installment agreements tolling the statute of limitations prejudices him. Because this testimony explains the accompanying records, which Crenshaw possessed, he will not suffer prejudice if the Court considers the declarations. Thus, the third factor weighs heavily in the Government's favor.

Consideration of the remaining factors does not tip the scale in favor of Crenshaw. To be sure, the Government's explanations for the purported nondisclosure—that the original revenue officer had "retired or was close to retirement" and that the parties had already exchanged written discovery by the time the Government's current attorney appeared in this action—are not compelling. Doc. 65 at 6. But the Government also recognizes that, although Ham's "explanations" are important, she merely describes the IRS transcripts and the ICS History—a point that reiterates the lack of prejudice to Crenshaw. *Id.* at 6–7. Even if the Court weighs these factors in Crenshaw's favor, they do not outweigh the third factor, which weighs heavily in the Government's favor. Therefore, even if the Court assumes that the Government failed to disclose Ham in violation of Rule 26(a) and (e), the Court finds, in its broad discretion, that such failure was harmless.

## 2.  The Government's Arguments

Having resolved whether to consider Ham's declarations, the Court turns to the merits of the Government's response to determine whether the Government demonstrates a genuine issue of material fact about the timeliness of this action. The Government points to the Forms 4340, the TXMODAs, and excerpts of the ICS History to argue that it has produced "ample documentation to support its claim that Crenshaw proposed two installment agreements." Doc. 58 at 6. The Forms 4340 for Coastal's Form 941 and Form 940 taxes indicate that: a request for an installment agreement was pending on November 7, 2008; the installment agreement was "granted and active" on January 6, 2010; the installment agreement was terminated on September 7, 2010; another request for an installment agreement was pending on December 14, 2010; this second installment agreement was "granted and active" on August 22, 2011; and this second installment agreement was terminated on April 2, 2012. Doc. 58-2 at 3–5, 12–14, 19–21. Further, the Government argues that excerpts of the ICS History include entries about when Crenshaw proposed the installment agreements, when the IRS accepted the agreements, and when the IRS terminated the agreements.[11] Doc. 57 at 7–8. For example, the ICS History indicates: "Installment Agreement Action" on November 7, 2008; "Action Approved" on January 6, 2010, with a first payment of $2,000 due on February 15, 2010; that the first installment agreement was no longer active as of September 7, 2010; the "TP/POA" submitted an installment agreement proposal for Coastal on December 14, 2010; "Action

---

[11] The Government also argues that the ICS History provides evidence of additional information about the two installment agreements, such as payment history. Doc. 58 at 8.

Approved" on August 22, 2011; and the second installment agreement was in default as of April 2, 2012. Doc. 58-4 at 2–3, 6–8, 10–13.

And the TXMODAs provide additional evidence of the dates discussed above for the installment-agreement requests, the IRS's acceptance of the agreements, and the IRS's termination of the agreements. Ham states that codes in the TXMODAs indicate Coastal's request for two installment agreements and the IRS's subsequent acceptance and termination of those installment agreements. Doc. 58-1 at 6. The TXMODAs display those codes next to the dates discussed above for the requests for the installment agreements, the IRS's acceptance of the agreements, and the IRS's termination of the agreements. Doc. 58-3 at 2–3, 8–9, 12–13.

Having provided this evidence of the installment agreements, the Government contends that the two installment agreements extended the collection statute of limitations by 736 days. Doc. 58 at 4–6. As explained above, the statute of limitations under 26 U.S.C. § 6502 is suspended during the period of time when a proposed installment is pending with the IRS and for 30 days following the IRS's termination of an installment agreement. The Government contends that the first installment agreement was pending with the IRS from November 7, 2008 (when it was requested), to January 6, 2010 (when the IRS accepted it), for a total of 425 days. Doc. 58 at 5. The IRS's termination of the first installment agreement on September 7, 2010, extended the statute of limitations for another 30 days. *Id.* The Government also contends that the second installment agreement was pending with the IRS from December 14, 2010, to August 22, 2011, for a total of 251 days. *Id.* And the IRS's

termination of the second installment agreement on April 2, 2012, extended the statute for another 30 days. Based on these dates, the Government asserts that the statute of limitations was tolled by 736 days (425 + 30 + 251 + 30 = 736). *Id.* Applying the 736-day period, the Government asserts that it timely filed this action on July 3, 2019.[12] *Id.* at 6.

The Government's evidence creates a genuine issue of material fact as to whether the Government timely filed this action. In response to Crenshaw pointing to

---

[12] In its response, the Government measures this 736-day period from July 16, 2007, which is the date of the IRS's initial assessment for the Form 941 taxes for the quarterly period ending on December 31, 2006. Doc. 58 at 5. The Government indicates that it made that assessment on July 16, 2007; that it needed to file this action on or before July 16, 2017, to avoid the statute of limitations; and that applying the 736-day period extends the deadline to file this action until July 22, 2019. *Id.* But the Government also indicates that the deadline to file this action for the January 4, 2010 assessment for the Form 941 taxes for the quarterly period ending on December 31, 2006, was January 4, 2020 (without applying the 736-day tolling period) and that the deadline to file this action for the December 28, 2009 assessment for the Form 941 taxes for the quarterly period ending on March 31, 2007, was December 28, 2019 (without applying the 736-day tolling period). *Id.* at 5–6. As such, this action may be timely to the extent that the Government seeks to collect these other assessments, regardless of the existence of the installment agreements. However, the Government has never argued this point. *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186-EAK-SPF, 2019 WL 3940842, at *34 (M.D. Fla. June 28, 2019) ("The Court will not analyze arguments not briefed."). For example, the Government has not argued that, even if the Court finds that this action is untimely to the extent that the Government seeks to collect certain assessments, the action is timely as to other assessments. Instead, it ties the timeliness of this action to the deadline to collect the July 16, 2007 assessment for the Form 941 taxes for the quarterly period ending on December 31, 2006. *E.g.*, Doc. 58 at 6 ("As the table indicates, the [Government] had to file its Complaint against Crenshaw no later than July 22, 2019."). Further, the Government has admitted and stipulated that its "prayer for relief"—not part of its prayer for relief—"would be time-barred by the applicable statute of limitations . . . absent the application of the period that the [Government] asserts in Paragraph 17 of the Amended Complaint the statute of limitations was tolled." Doc. 52-2 at 3–4; Doc. 59 ¶16. Because the Government does not address the potential timeliness of other assessments, the Court declines to consider whether this action is timely to the extent that the Government seeks to collect other assessments.

the Government's admissions that it lacks copies of the installment agreements and related correspondence and that the statute of limitations would bar its prayer for relief absent the alleged tolling of the statute by 736 days as a result of the two installment agreements, the Government provides evidence indicating that Coastal entered into two installment agreements with the IRS and that those installment agreements tolled the statute of limitations by 736 days. To be sure, as discussed in more detail below, some of the Government's records are problematic.[13] For example, the Forms 4340 indicate that an installment agreement was "granted an active" in February 2009 and July 2009, and later entries indicate "granted installment agreement erroneously posted" for these dates, Doc. 58-2 at 7, 15, 23. But the Court must view the evidence in the light most favorable to the Government, who is the nonmoving party for purposes of Crenshaw's motion.[14] Viewing the evidence in the light most favorable to the Government, a reasonable factfinder could find that the Government timely filed this action to collect the unpaid federal employment and unemployment tax liabilities as a result of the two installment agreements. As such, a genuine issue of material fact

---

[13] Conceding that *Nugent* recognizes that the Government may invoke the presumption of regularity only after bearing the burden of proving the installment agreements' existence, the Government nonetheless seems to contend that its evidence establishes the existence of the installment agreements. Doc. 58 at 9 n.4. As discussed above, while the data entries on the Government's transcripts do not trigger the presumption of regularity to prove the existence of the installment agreements, the transcripts constitute circumstantial evidence of the installment agreements. But the Government's evidence simply raises a genuine issue of material fact as to the existence of the installment agreements such that Crenshaw's argument that the record lacks a genuine issue of material fact as to the untimeliness of this action fails.

[14] In his reply, Crenshaw argues that his declaration complies with Rule 56. Doc. 62 at 6–7. The Court already addressed this issue.

exists as to whether the Government timely filed this action. Therefore, the Court will deny Crenshaw's Motion for Summary Judgment.

### B. The Court Will Deny the Government's Motion for Summary Judgment and for Default Judgment

In its motion, the Government seeks entry of summary judgment against Crenshaw and default judgment against Coastal. Doc. 51 at 1. The Government asks the Court to determine, order, and adjudge that: (1) Crenshaw is indebted to the Government for Coastal's unpaid federal employment and unemployment tax liabilities, plus interest and statutory additions; (2) Coastal is indebted to the Government for unpaid federal employment and unemployment tax liabilities, plus interest and statutory additions; (3) upon assessment of these tax liabilities, and following notice and demand for payment, federal tax liens arose against Crenshaw and attached to the Subject Property; (4) the Subject Property should be sold, free and clear of any of Defendants' interests in the Subject Property, at a public auction in accordance with the decree of foreclosure and order of sale to be submitted to the Court by the Government within 30 days after the Court rules on the motion; and (5) the net proceeds of the Subject Property be distributed as the Court further directs. *Id.* at 18.

During oral argument, the Court advised that it would deny the Government's request for default judgment because the Clerk had not entered a default against Coastal after the Government filed the Amended Complaint; the Clerk had entered default against Coastal only upon the initial complaint. As such, the Court will deny the Government's request for default judgment in its motion. The Government has

now separately renewed its request for default judgment against Coastal, which the Court addresses below (Doc. 70).

In seeking summary judgment, the Government provides another declaration from Ham (Doc. 51-1), to which it attaches several exhibits, including the Forms 4340 (Doc. 51-2), the notices of federal tax liens filed in the public records of Marengo County on August 28, 2010 (Doc. 51-5) and refiled notices of federal tax liens (Docs. 51-6, 51-7, 51-8). The Government also provides Crenshaw's responses to the Government's second requests for admissions (Doc. 51-11). The Court has already explained that it will consider Ham's declarations. The Government argues that the Forms 4340 "are presumptive proof that the IRS properly made its assessments against the taxpayer and that the amounts are correct." Doc. 51 at 13. As a result, the Government asserts that Crenshaw carries the burden of "proving that those assessments are arbitrary or incorrect," which he cannot do. *Id.* The Government does not address the statute of limitations in its motion.

But Crenshaw raises his statute-of-limitations affirmative defense in his response, arguing that this affirmative defense defeats the Government's request for summary judgment. Doc. 60 at 3–7. Again, Crenshaw bears the burden of proving this affirmative defense.[15] *Blue Cross & Blue Shield*, 913 F.2d at 1552; *Wells Fargo Bank, N.A.*

---

[15] For this reason, Crenshaw's argument that the Court should deny the Government's Motion for Summary Judgment because the Government failed to address the statute of limitations in its motion fails. Doc. 60 at 5. Further, the cases on which Crenshaw relies are distinguishable; here, unlike those cases, the Government, as the moving party, does not seek summary judgment on an affirmative defense or argue, in initially moving for summary judgment, that Crenshaw's affirmative defense fails as a matter of law.

*v. Trotman*, 940 F. Supp. 2d 1359, 1368 (M.D. Ala. 2013) (explaining that, on a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing the affirmative defense's applicability since the defendant bears the burden of proof on his affirmative defense at trial). As such, the Court must address this affirmative defense.

Pointing to the Government's responses to his first requests for admissions, Crenshaw again highlights the Government's admissions that it lacks copies of the installment agreements and copies of any correspondence to or from Coastal or Crenshaw relating to the installment agreements. Doc. 60 at 6; Doc. 60-2 at 3. And he provides the Government's admission in its responses to his first request for admissions that its "prayer for relief would be time-barred by the applicable statute of limitations to collect an unpaid tax absent the application of the period that the Plaintiff asserts in Paragraph 17 of the Amended Complaint the statute of limitations was tolled." Doc. 60 at 5; Doc. 60-2 at 3–4.

Crenshaw also argues that the record lacks admissible evidence for the installment-agreement exception to the statute of limitations, pointing to his Motion for Summary Judgment "to limit duplicate briefing." Doc. 60 at 7. To the extent that Crenshaw seeks to rely on the declaration and denials to which he cites in his Motion for Summary Judgment, those cited portions of his declaration and his denials fail to comply with Rule 56, as discussed above. Despite seeking to avoid duplicate briefing by referencing his Motion for Summary Judgment, where he discussed the presumption of regularity, Crenshaw again cites to cases discussing the presumption

31

of regularity to assert that the Government cannot rely on entries in an IRS transcript to prove the existence of a disputed document, agreement, or event. Doc. 60 at 7–8. As explained above, while data entries on transcripts do not trigger the presumption of regularity to prove the existence of an installment agreement, the transcripts nonetheless constitute circumstantial evidence for the Court to consider. Further, because the presumption does not extend to the existence of the installment agreements, the Government may invoke the presumption only after bearing the burden of proving the existence of those agreements.

Crenshaw argues that, even if the Court credits the transcript entries, the records produced by the Government call into question the propriety of the transcripts. *Id.* at 9. He contends that the ICS History provided by the Government indicates that the original request for an installment agreement was approved on February 17, 2009, not January 6, 2010. *Id.* In support, he provides a page from the ICS History (Doc. 60-8), which his counsel authenticates as a true and correct copy of a document received from the Government in discovery. Doc. 60-7 at 1. This page from the ICS History indicates "Action Approved" on February 17, 2009 and that a "Routine IA" was generated for "Coastal States Development LLC Crenshaw Curtis A Sole Mbr." Doc. 60-8 at 1. The page also indicates that a $2,000 monthly payment would be due on March 15, 2009. *Id.* Of course, the Government alleges that the IRS accepted the first installment agreement on January 6, 2010. Crenshaw theorizes that the IRS did not input the transcript code documenting the approval of the first installment agreement until January 6, 2010, and that the statute of limitations should not be tolled for those

10 months because only a pending installment agreement tolls the statute. Doc. 60 at 9. Again, the statute of limitations under 26 U.S.C. § 6502 is suspended only during the period of time when a proposed installment is pending with the IRS and for 30 days following the IRS's termination (or rejection) of an installment agreement. As such, Crenshaw contends that the IRS's own records bely "the 14-month installment agreement pendency reflected on the certified transcripts" and the allegations in the Amended Complaint. *Id.* at 9.

Finally, Crenshaw provides a 2013 report from the Treasury Inspector General for Tax Administration (Doc. 60-9) to argue that the Treasury Inspector General reported in 2013 "that the IRS was improperly computing the 10-year Collection Statute Expiration Date in many 'Collection Due Process' cases." Doc. 60 at 9–10. He also provides another 2013 report from the Treasury Inspector General (Doc. 60-10) to point out, among other things, that as the complexity and difficulty of collection-statute-expiration-date recalculations increase, the risk of IRS records reflecting inaccurate or erroneous collection-statute-expiration dates also increases. *Id.* at 10.[16]

Thus, Crenshaw argues that his statute-of-limitations defense defeats the Government's request for summary judgment. Contending that the 10-year statute of

---

[16] Crenshaw attaches these reports to the declaration of his attorney, in which his attorney identifies the reports as true and correct copies. Doc. 60-7 at 2. Without further explanation, the Government labels these reports as "inadmissible hearsay." Doc. 61 at 5. Although this label is unpersuasive in light of the Government's failure to provide any accompanying argument, the Treasury Inspector General's acknowledgement of errors or the likelihood of errors in other cases does not demonstrate that any errors occurred here.

limitations bar this action, he points to: (1) the Government's admissions that it lacks copies of the installment agreements and copies of any correspondence to or from Coastal or Crenshaw relating to the installment agreements; (2) the Government's admission that the statute of limitations would time-bar its "prayer for relief" absent the application of the period that the Government alleges the statute of limitations was tolled by in the Amended Complaint; (3) the page from the ICS History, which indicates that a "Routine IA" was generated for Coastal on February 17, 2009; and (4) the 2013 reports from the Treasury Inspector General.[17]

Because Crenshaw demonstrates that the Government has admitted that the statute of limitations bars this action absent the alleged tolling of that statute, the burden shifts to the Government to demonstrate that an exception or tolling provision applies. *Blue Cross & Blue Shield*, 913 F.2d at 1552 n.13 ("Once a defendant shows that the applicable statute of limitations bars the claim, the burden shifts to the plaintiff to demonstrate that an exception or tolling provision applies."); *Borchardt*, 470 F.2d at

[17] Because the Government no longer possesses Coastal's Form 941 tax return for the tax period ending on December 31, 2006, Coastal's Form 941 tax return for the tax period ending on March 31, 2007, or both installment agreements, Crenshaw also argues that the Court should impose adverse inferences against the Government "as a result of its spoliation of irreplaceable documents." Doc. 60 at 11–13. In the Eleventh Circuit, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam). "Mere negligence in losing or destroying the records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case." *Id.* (internal quotation marks omitted). Here, at a minimum, Crenshaw fails to establish bad faith on behalf of the Government. As such, this argument fails. Crenshaw also argues that the Court should use its equitable powers to deny the foreclosure of the Subject Property. Doc. 60 at 13–14. Because the Court will deny the Government's Motion for Summary Judgment, it need not address this argument.

34

261. In reply, the Government offers two main arguments: (1) the IRS properly assessed the federal employment and unemployment taxes against Coastal; and (2) the Government timely filed this action because the two installment agreements extended the statute of limitations. Doc. 61 at 2–5. These arguments are unpersuasive.

For the first argument, the Government reiterates that the Forms 4340 attached to Ham's declaration in support of its Motion for Summary Judgment constitute presumptive proof that the assessments were properly made. Doc. 61 at 2. The Government contends that, because it has provided the Forms 4340, the burden shifts to Crenshaw to prove that the tax assessments against Coastal were erroneous, which he fails to do. *Id.* at 2–3. During oral argument, the Government argued that the presumption of correctness extends to the events listed on the Forms 4340, including the entries pertaining to the installment agreements. In other words, the Government asks the Court to presume that the entries about the installment agreements in the Forms 4340 are correct.

"An assessment amounts to an IRS determination that a taxpayer owes the federal government a certain amount of unpaid taxes and is entitled to a legal presumption of correctness—a presumption that can help the government prove its case against a taxpayer in court." *United States v. Stein*, 881 F.3d 853, 854–55 (11th Cir. 2018) (internal quotation marks and alterations omitted). "In reducing an assessment to judgment, the Government must first prove that the assessment was properly made." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). "The Government's submission of a Form 4340 establishes such a presumption." *Id.* "Once

35

the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." *Id.*

During oral argument, the Government's counsel conceded that she was unable to locate any binding authority standing for the proposition that the presumption of correctness extends to entries in the Forms 4340. The Court also has not located any binding authority standing for that proposition. A few courts outside of the Eleventh Circuit have held that the presumption of correctness extends to entries within Forms 4340. *E.g.*, *United States v. Kidwell*, No. 2:16-433 WBS EFB, 2017 WL 714381, at *4 (E.D. Cal. Feb. 23, 2017) (presuming that dates for pending offers-in-compromise listed on Forms 4340 were correct where the defendant presented no evidence suggesting that the Forms 4340 were incorrect in responding to the Government's motion for summary judgment); *United States v. Meehan*, 530 F. App'x 155, 156 (3d Cir. 2013) (upholding the district court's conclusion about the tolling of the limitations period as a result of offers-in-compromise because "information in a Form 4340 is generally considered to be presumptively correct" and the taxpayers did not dispute the existence of the offers-in-compromise).

The Government relied heavily on one of these cases during oral argument as "persuasive authority," but failed to explain why that case's reasoning is persuasive. Indeed, whether the Government correctly made an assessment is distinct from whether the Government's action to collect on that assessment is timely. *Cf.* 26 U.S.C. § 6201 (authorizing and requiring the Secretary to "make the inquiries, determinations, and assessments of all taxes" imposed by the Internal Revenue Code that have not

been "duly paid by stamp at the time and in the manner provided by law"); *id.* § 6501(a) (requiring generally the assessment of any tax imposed under the Internal Revenue Code within 3 years after the return was filed); *id.* § 6502(a) (providing that, where an assessment of any tax imposed by the Internal Revenue Code was timely made, that tax may be collected by levy or by a proceeding in court if the levy is made or the proceeding is initiated within 10 years after the assessment of the tax, or, if an installment agreement exists, before the date that is 90 days after the expiration of any period for collection agreed upon by the Secretary and the taxpayer at the time when the installment agreement was entered into).

The Government also argues in passing that Ham's entire second declaration is "similarly entitled to a presumption of correctness." Doc. 61 at 2. But the sole case to which the Government cites does not stand for the proposition that a revenue officer's explanations of events in Forms 4340 or other types of IRS transcripts are entitled to a presumption of correctness.

Therefore, based on the analysis above, the Court declines to extend the presumption of correctness to the entries about the installment agreements in the Forms 4340.[18] As such, the Court will not presume that the entries in the Forms 4340 about the installment agreements are correct.

---

[18] Also, in its reply, the Government cites to *United States v. Chambers*, No. 3:09-cv-961-MMH-JRK, 2014 WL 2136041, at *10 (M.D. Fla. May 22, 2014), for the proposition that a taxpayer cannot overcome the presumption of correctness by submitting tax returns, uncorroborated oral testimony, or self-serving testimony. Doc. 61 at 3. But *Chambers* relies on *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985), for that proposition. 2014 WL 2136041, at *10. The *en banc* Eleventh Circuit has since overruled *Mays*. *Stein*, 881 F.3d at 856.

Next, the Government argues that it timely filed this action because the two installment agreements extended the ten-year collection period by 736 days. Doc. 61 at 4. In doing so, it points to Ham's second declaration. *Id.* An installment agreement's acceptance occurs when the IRS notifies the taxpayer or taxpayer's representative of the acceptance, and Ham points to the language in the Forms 4340 indicating that an installment agreement was "granted active" on January 6, 2010, to show the IRS's acceptance of the first installment agreement. Doc. 58-1 at 4. Referring again to Ham's second declaration, the Government asserts that first installment agreement request was pending for more than a year "partly due to internal codes preventing activation of the agreement . . . ." Doc. 61 at 4. In that declaration, Ham concedes that the Forms 4340 indicate that Coastal's first installment agreement was granted and activated on two separate dates: February 17, 2009, and July 6, 2009. Doc. 58-1 at 4–5. Indeed, the Forms 4340 indicate that an installment agreement was "granted and active" on February 17, 2009, and July 6, 2009, months before January 6, 2010. Doc. 51-2 at 3, 12, 20. Of course, "granted and active" is the same language for the January 6, 2010 entry, to which the Government cites for the first installment agreement's acceptance.

Other records provided by the Government also indicate that the IRS accepted an installment agreement in 2009. For example, in the TXMODAs, the same code for the IRS's acceptance of an installment agreement on January 6, 2010, and August 11, 2011—"TC 971/AC 063," according to Ham—appears next to entries for February 17, 2009, and July 6, 2009. Doc. 58-3 at 2–3, 8–9, 12–13. Further, an entry in Coastal's ICS History indicates that the case was originally closed on February 17, 2009 "as

38

Routine IA." Doc. 58-4 at 3. This entry states that the IRS set up an installment agreement for $2,000 per month "on the 15th as originally approved by GM." *Id.* Later entries state that the taxpayer "made 3 IA pymts [sic] of $2,000 for April, March, and May of 2009" and that "only 4 payments were made on 3/19/2009, 04/17/2009, 05/26/2009, and 02/20/2010." *Id.* at 4–5.

Although conceding that the Forms 4340 indicate that Coastal's first installment agreement was granted and activated on February 17, 2009, and July 6, 2009, Ham states that "several of the tax modules had what is known as an '-A freeze,' which prevented the IRS from granting and activating the first installment agreement until January 6, 2010 once the freezes were finally removed." Doc. 58-1 at 4–5. One of the excerpts from Coastal's ICS History, which Crenshaw received, also states that the case was "originally closed on 2/17/09 as Routine IA" and that the "case was re-opened due to several modules with -A freezes which prevented the IA to be [sic] input." Doc. 58-4 at 3. However, the Government never explains the effect of this "-A freeze" on the tolling of the statute of limitations. For example, the Government does not explain the effect of an "-A freeze" on an installment agreement's pendency or why a delay of an installment agreement's input into the system, or a freeze, delays the IRS's "acceptance" of an installment agreement under the applicable statutes and regulations. This omission is particularly damaging to the Government's argument, given that the Government seeks to rely on a lapse in its own system to toll the statute of limitations. Ham's declaration fails to even define an "-A freeze." During oral

argument, the Government's counsel briefly sought to explain an "-A freeze," but this brief description is simply argument; it is not in evidence.

Although the Government simply states that the "-A freeze" prevented the IRS from "granting and activating" the first installment agreement, the Government's own records indicate that an installment agreement was accepted in 2009 and that the taxpayer made payments to the IRS. Similarly, although the Forms 4340 include two entries for February 17, 2009, and July 6, 2009, both stating "Granted Installment Agreement Erroneously Posted," after the 2018 entries, Doc. 51-2 at 7, 15, 23, the Court will not rely on entries about the IRS "erroneously post[ing]" installment agreement entries to ignore the evidence of an installment agreement's acceptance and resulting payments in 2009. If the IRS accepted Crenshaw's first installment agreement in 2009, rather than on January 6, 2010, this action is not timely.

In light of Ham's conclusory explanation of the "-A freeze," the evidence indicating an installment agreement's acceptance and resulting payments in 2009, and the Government's failure to address some of those records, the Court cannot conclude that there is no genuine issue of material fact that the Government timely filed this action. As a result, the Court cannot conclude, on this record, that the Government is entitled to judgment for the requested amounts of unpaid tax liabilities. Thus, the Court will deny the Government's request for summary judgment.

## C. The Court Will Deny the Government's Renewed Motion for Default Judgment

Finally, the Government moves again for default judgment against Coastal. The Clerk previously entered default against Coastal. Doc. 69 at 1. The Government asks the Court to enter default judgment against Coastal in the amount of $56,743.14, as of February 22, 2022, plus accruing interest and statutory additions, for unpaid employment tax liabilities for the fourth quarter of 2006 and the first quarter of 2007 and for unpaid unemployment tax liability for the 2007 calendar year. Doc. 70 at 8. The Government argues that the Court should deem its allegations in the First Amended Complaint admitted, that the tax assessments against Coastal are valid and enforceable, and that the balances due on the assessed taxes total $56,743.14 as of February 22, 2022. *Id.* at 4–8. In support, the Government offers another declaration of Ham (Doc. 70-1), the Forms 4340 (Doc. 70-2), and a computation reflecting the balance of Coastal's outstanding federal employment and unemployment tax liabilities as of February 22, 2022 (Doc. 70-3).

The Court will deny the Renewed Motion for Default Judgment, without prejudice. The Government bases its claims against Crenshaw and Coastal upon the same set of allegations, including its allegations that the two installment agreements tolled the statute of limitations by at least 736 days, thereby allowing the Government to timely file this action. However, as discussed above, there is a genuine dispute of material fact as to whether the Government timely filed this action. Therefore, in light of the analysis above, the Court declines to accept the Government's allegations as true, even though Coastal is in default. *See Nishimatsu Constr. Co., Ltd v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself

41

warrant the court in entering a default judgment."); *Gridley IP LLC v. Cabconnect, Inc.*, No. 8:21-cv-265-CEH-AEP, 2021 WL 3602805, at *1 (M.D. Fla. Aug. 13, 2021) ("Plaintiff is not entitled to entry of a default judgment against Defendant simply because a clerk's default has been entered."). And because the Court declines to accept the Government's allegations as true, the Court must deny the Renewed Motion for Default Judgment, without prejudice.

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. As a genuine issue of material fact exists, the United States of America's Motion for Summary Judgment (Doc. 51) is **DENIED**; and the United States of America's Motion for Default Judgment against Defendant Coastal States Development, LLC (Doc. 51) is **DENIED** for the reasons announced on the record at the oral argument.

2. As a genuine issue of material fact exists, Defendant Curtis A. Crenshaw's Dispositive Motion for Summary Judgment (Doc. 52) is **DENIED**.

3. The United States of America's Renewed Motion for Default Judgment against Defendant Coastal States Development, LLC (Doc. 70) is **DENIED**, **without prejudice**.

4. The Court will schedule, by separate notice, a telephonic status conference to schedule this action for trial.

**DONE AND ORDERED** in Tampa, Florida on September 14, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

43